1   Matthew Oskowis
    105 Pony Soldier Rd
2   Sedona, Arizona 86336
    Tel.: 602-523-1863
3   Matthew.Oskowis@live.com

4   *Plaintiff Pro Se*

5

FILED          LODGED
RECEIVED       COPY

SEP 0 8 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

6               **UNITED STATES DISTRICT COURT**

7                     **DISTRICT OF ARIZONA**

8

9   Matthew Oskowis, individually and on   )   Case No.:
                                            )
10  behalf of E.O.,                         )
                                            )
11                  Plaintiff,              )   **Complaint**   CV-14-8166-PCT-BSB
                                            )
12  vs.                                     )
                                            )
13  Sedona Oak-Creek Unified School         )
                                            )
14  District #9,                            )
                                            )
15                  Defendant               )
    _____)

16

17

18                    **Jurisdiction**

19      1.   This is an administrative appeal of an impartial due process hearing

20  decision brought pursuant to the civil action provision of the Individuals

21  with Disabilities Education Act(IDEA), 20 United States Code ("U.S.C.") §

22  1415(i)(3), IDEA's state and federal implementing regulations, 34 Code of

23  Federal Regulations ("C.F.R.") Part 300, and Arizona Administrative Code

24  ("A.A.C.") R7-2-401 et seq., and Arizona Revised Statutes ("A.R.S"), Title

25  15, Chapter 7, Article 4.

26      2.   Jurisdiction is predicated upon 28 U.S.C. § 1331, which provides the

27  district courts with original jurisdiction over all civil actions arising

28  under the laws of the United States, and upon the civil action provision of

IDEA, 20 U.S.C. § 1415(i)(3)(A), which provides that the district courts of the United States shall have jurisdiction of actions brought under section 1415(i)(3) without regard to the amount in controversy.

## Venue

3.   Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the plaintiffs and defendant, and upon 28 U.S.C. § 1391(b)(2) based upon the location of the subject.

## Parties

4.   Plaintiff Matthew Oskowis ("Parent") resides in the State of Arizona, County of Yavapai. Plaintiff and E.O.'s mother Tara Lynn Middlebrook will be referred to as "Parents" in this Complaint.

5.   Plaintiff E.O. is a child with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A).

6.   Plaintiff Parent is the parent of E.O. as defined by IDEA, 20 U.S.C. § 1401(23).

7.   Defendant Sedona Oak Creek Unified School District No. 9 ("District") is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services to its students in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.*, and the regulations promulgated thereunder.

8.   E.O. and his Parents live within the boundaries of the Defendant Sedona Oak-Creek Unified School District No. 9.

## Exhaustion of Administrative Remedies

9.   On July 12, 2013, plaintiff Parent filed a Due Process Complaint with the Arizona Department of Education Exceptional Student Services Dispute Resolution Unit. [see Exhibit A]

10.  Tammy L. Eigenheer, administrative law judge ("ALJ") was appointed as Impartial Hearing Officer ("IHO") pursuant to IDEA, 20 U.S.C. § 1415(f)(3)(A).

11.  On September 3, 2013, plaintiff Parent filed a second Due Process Complaint with the Arizona Department of Educational Exceptional Student Services Dispute Resolution Unit. [see Exhibit B] This complaint was subsequently consolidated with the prior one.

12.  On November 18, 19, & 20th, 2013, the initial contested due process hearing was held at the District's administrative offices.

13.  On November 26, 2013, plaintiff Parent filed a third Due Process Complaint with the Arizona Department of Educational Exceptional Student Services Dispute Resolution Unit. [see Exhibit C]

14.  On January 8, 2013, plaintiff Parent filed a fourth Due Process Complaint with the Arizona Department of Educational Exceptional Student Services Dispute Resolution Unit. [see Exhibit D]

15.  The third and fourth Due Process Complaints were consolidated with the first two prior Due Process Complaints.

16.  On April 2, 2014, another contested due process hearing was held at the District's administrative offices.

17.  On August 4, 2014, ALJ Eigenheer issued a decision. [see Exhibit E]

18.  No further appeal is available at the state administrative level. See A.A.C. R7-2-405(H)(8).

## The Individuals with Disabilities Education Act

19.  The IDEA requires schools to make available to children with disabilities a "free appropriate public education," or "FAPE," tailored to each child's individual needs. 20 U.S.C. § 1400(d)(1)(A).

20.  States receiving federal funds under the IDEA must show that they have implemented "policies and procedures" to provide disabled children with a

FAPE, including procedures to develop an individualized education program (IEP) for each eligible child. 20 U.S.C. § 1412(a), (a)(1), (a)(4).

21.  The IEP is a written statement for each child with a disability that is developed, reviewed, and revised in a meeting in accordance with state and federal requirements and must include a statement of the child's present levels of academic achievement and functional performance, including how the child's disability affects the child's involvement and progress in the general education curriculum. 34 C.F.R. § 300.320(a)(1).

22.  The IEP must also include a statement of measurable annual goals, including academic and functional goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability. 34 C.F.R. § 300.320(a)(2).

23.  The IEP must also contain a description of how the child's progress toward meeting the annual goals will be measured and when periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided. 34 C.F.R. § 300.320(a)(3).

24.  The IEP must contain a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided to enable the child to advance appropriately toward attaining the annual goals, to be involved in and make progress in the general education curriculum, to participate in extracurricular and other nonacademic activities, and to be educated and participate with other

children with disabilities and nondisabled children. 34 C.F.R. §
300.320(a)(4).

25. To the extent, if any, to which the child will not participate with
nondisabled children in the regular class and other activities, the IEP must
contain an explanation as to why. C.F.R. § 300.320(a)(5).

26. The IEP must also contain a statement of any individual appropriate
accommodations that are necessary to measure the academic achievement and
functional performance of the child on State and districtwide assessments,
and if the IEP Team determines that the child must take an alternate
assessment instead of a particular regular State or districtwide assessment
of student achievement, a statement of why the child cannot participate in
the regular assessment, and the particular alternate assessment selected is
appropriate for the child. 34 C.F.R. § 300.320(a)(6).

27. The IEP must also contain the projected date for the beginning of the
services and modifications, and the anticipated frequency, location, and
duration of those services and modifications. 34 C.F.R. § 300.320(a)(7).

28. The IDEA primarily provides parents with various procedural safeguards,
including the right to participate in IEP meetings and the right to challenge
an IEP in state administrative proceedings and, ultimately, in state or
federal court.

29. The IEP developed through the required procedures must be reasonably
calculated to enable the child to receive educational benefits.

30. The Ninth Circuit has held that a child receives FAPE if a program of
instruction "(1) addresses his unique needs, (2) provides adequate support
services so he can take advantage of the educational opportunities and (3) is
in accord with an individual educational program." *Park v. Anaheim Union Sch.
Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) (citing *Capistrano Unified Sch.
Dist. V. Wartenberg*, 59 F.3d 884, 893 (9th Cir. 1995) )

31.  A disabled student's parents may initiate an impartial due process hearing if they disagree with the school district's decision when it proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child, or when it refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child. 34 C.F.R. § 300.503(a), 300.507(a).

32.  The due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint. 34 C.F.R. § 300.507(a)(2).

33.  A hearing officer's determination of whether a child received FAPE must be based on substantive grounds, but in matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE if the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child, or caused a deprivation of educational benefit. 34 C.F.R. § 300.513(a).

34.  The Ninth Circuit has held that a school district is required to make a formal written offer under IDEA. *Union School Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994).

35.  Expounding on this requirement, the Second Circuit has held that "testimony that materially alters the written plan is not permitted" at a due process hearing to establish the appropriateness of the school district's IEP. *R.E. v. New York City Dept. of Educ.*, 694 F.3d 167, 186-187 (2nd Cir. 2012).

36. On the other hand, "evidence that the school district did not follow the IEP as written might be relevant in a later proceeding to show that the child was denied a FAPE because necessary services included in the IEP were not provided in practice." 694 F.3d at 187, fn.3.

37. The Ninth Circuit has held that "a material failure to implement an IEP violates the IDEA. A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." This standard "does not require that the child suffer demonstrable education harm in order to prevail." The Court noted that "the child's education progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided." *Van Duyn v. Baker School District 5J*, 502 F.3d 811, 815 (9th Cir. 2007).

38. The Third Circuit has held that "[a] court should determine the appropriateness of an IEP as of the time it was made, and should use evidence acquired subsequently to the creation of an IEP only to evaluate the reasonableness of the school district's decisions at the time they were made." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564-65 (3rd Cir. 2010).

39. Likewise, the Ninth Circuit has held that "[w]e do not judge an [IEP] in hindsight; rather, we look to the [IEP's] goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer [Student] with a meaningful benefit ... In striving for 'appropriateness,' an IEP must take into account what was, and what was not, objectively reasonable when the snapshot was taken, that is at the time the IEP was drafted." *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).

40. In Arizona, impartial due process hearings are conducted by the state educational agency.

41. As such, Arizona parents have the right to bring a civil action, in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy, to appeal an impartial hearing decision. 34 C.F.R. § 300.516(a).

**Factual Background**

42. E.O. ("Student") is now a 10 year old boy (DOB ~~####~~/2004).

43. On March 23, 2006, E.O. was diagnosed with classical infantile autism.

44. E.O. is non-verbal and relies on an augmented communication system to communicate his wants and needs.

45. At the time of the initial Due Process Complaint the Student was attending the third grade at West Sedona School at Sedona Oak-Creek Unified School District No. 9.

46. Student has received special education services since his diagnosis in 2006.

47. On July 12, 2013, plaintiff Parent filed a Due Process Complaint with the Arizona Department of Education Exceptional Student Services Dispute Resolution Unit. [see Exhibit A]

48. Tammy L. Eigenheer, administrative law judge ("ALJ") was appointed as Impartial Hearing Officer ("IHO") pursuant to IDEA, 20 U.S.C. § 1415(f)(3)(A).

49. The Due Process Complaint alleged the that the defendant failed to implement the Student's August 2012 IEP, denying him a free appropriate public education for the 2012-2013 academic year by failing to provide educational "opportunity" by moving to the next short-term objective ("STO") in the goals and objectives of the Student's August 2012 IEP within a reasonable time once he had mastered the current STO.

50. As relief the parents requested the IHO make a finding that the Student was denied the right to a free appropriate public education by defendant, due

to defendant's failure to appropriately implement Student's August 2012 IEP, and, furthermore, that this failure to implement caused Student loss of educational benefit and educational harm.

51.  The Parents also requested compensatory educational service hours for the loss of educational opportunity during the relevant portions of the Student's August 2012 IEP.

52.  The Parents also requested that a recognized independent, third-party authority by assigned to provide supervisory and oversight of the Student's educational program.

53.  On August 14 and 15, 2013 the District convened an IEP meeting to create the Student's IEP for 2013-2014 academic year.

54.  During the IEP meetings, the Parent's felt that their parental participation was being severely curtailed by the District and subsequently filed a second Due Process Complaint on September 3, 2013 with the Arizona Department of Education Exceptional Student Services Dispute Resolution Unit. [see Exhibit B].

55.  The second Due Process Complaint alleged the defendant deliberately sought to limit the parental participation though several violations of the IDEA.

56.  The Parents also requested that the prior IEP be "stay put" until the current allegations regarding the new IEP could be resolved.

57.  As relief the Parents requested that another annual IEP be created for the Student's 2013-2014 academic year.

58.  The second Due Process Complaint was consolidated with the first Due Process Complaint under the plaintiff Parent's protest.

59.  On November 18, 19, & 20th, 2013, the initial contested due process hearing was held at the District's administrative offices.

60. On November 26, 2013, plaintiff Parent filed a third Due Process Complaint with the Arizona Department of Educational Exceptional Student Services Dispute Resolution Unit. [see Exhibit C]

61. The third Due Process Complaint alleged the defendant failed to comply with the August 2012 IEP by failing to provide the special education service minutes set forth in the IEP; failing to provide 200 minutes of occupational therapy per month by an Occupational Therapist as stated in the August 2012 IEP.

62. As relief the parents requested the IHO make a finding that the Student was denied the right to a free appropriate public education by the defendant, due to defendant's failure to appropriately implement Student's August 2012 IEP, and, furthermore, that this failure to implement caused Student loss of educational benefit and educational harm.

63. The Parents also requested compensatory educational service hours for the lack of implementation of actual special educational service minutes associated with the August 2012 IEP.

64. The Parents also requested compensatory education services for the missed occupational therapy.

65. Again, the Parents requested that a recognized independent, third-party authority by assigned to provide supervisory and oversight of the Student's educational program.

66. On January 8, 2013, plaintiff Parent filed a fourth Due Process Complaint with the Arizona Department of Educational Exceptional Student Services Dispute Resolution Unit. [see Exhibit D]

67. In the fourth Due Process Complaint alleged the defendant failed to provide Prior Written Notice of changes to Student's August 2012 IEP and/or failed to comply with issued Prior Written Notices during the 2012-2013 academic year.

68. As relief the Parents reiterated their request that a recognized independent, third-party authority by assigned to provide supervisory and oversight of the Student's educational program.

69. The third and fourth Due Process Complaints were consolidated with the first two prior Due Process Complaints.

70. On April 2, 2014, another contested due process hearing was held at the District's administrative offices.

71. On August 4, 2014, ALJ Eigenheer issued a decision. [see Exhibit E]

72. ALJ Eigenheer ordered the defendant to provide the Student with ninety hours of educational services in the categories of Basic Reading Skills, Math, and Listening Comprehension; and denied all other relief requested by the Parents.

73. Parent Plaintiff agrees with the ALJ in that the defendant failed to provide FAPE when it failed to advance the Student to the next STO within a reasonable time once he had demonstrated mastery of the previous STO of the goals and objectives of the August 2012 IEP.

74. The Parent Plaintiff does not agree with the ALJ's calculation of compensatory service hours as she operated under the assumption that the bulk of E.O.'s time at school is ancillary to his goals and objectives.

75. Parent Plaintiff is otherwise aggrieved by the findings and the decision of the ALJ insofar as they both factually and legally erroneous, and the ALJ improperly denied further relief to the Parent Plaintiff. Among other things, and not by way of limitation:

    (a) The ALJ provided her findings after a protracted amount of time that this Plaintiff considers unreasonable, one hundred twenty four days after the April 2, 2014 hearing date.

    (b) The ALJ erred in consolidating the complaints as it caused unnecessary delay. The expected time line for Due Process Complaints

to be resolved is seventy five days. 34 C.F.R. § 300.515. The findings were issued three hundred and eighty eight days after the filing of the initial Due Process Complaint.

(c) The ALJ erred in granting multiple continuances requested by defendant causing further unnecessary delay.

(d) The ALJ relied on upon testimony that materially expanded the services provided under the IEP at issue, in violation of the mandate that an IEP is judged on its content and not upon testimony that materially expands on the services offered to the student.

(e) The ALJ erred on giving greater weight to expert testimony of Dr. Trina Spencer who had been specifically excluded by verbal agreement with the District at the August 2012 IEP meeting from participating with E.O.'s August 2012 implementation for the 2012-2013 academic year.

(f) The ALJ erred in finding that the DTT interval "assumed" and "surmise[d]" by the Parent Plaintiff was flawed, although the DTT interval was based on the District's own recorded data and the recorded observation of a credible witness, Dr. Joseph Gentry.

(g) The ALJ erred in disputing the DTT interval, because the Parent Plaintiff did not directly observe the Student do a trial in the classroom.

(h) The ALJ erred in not considering the testimony of Ken Baumgartner at the August 2012 IEP, where he specifically speaks to how he calculated the educational service hours in the IEP based on the goals and objectives in the IEP.

(i) The ALJ erred in the observation that majority of E.O.'s day spent was not reflected by the goals and objectives indicated by the IEP.

(j)  The ALJ erred when she relied on testimony that materially expanded the Occupation Therapist's weekly service minutes stated in the August 2012 IEP as being merely a notation and not actual delivery of the service. No testimony was given by the Occupational Therapist directly to indicate either way.

(k)  The ALJ erred in finding that the parents were not denied meaningful participation in the IEP development process, where the defendant made changes to the IEP without proper documentation, or failed to implement changes that were documented.

(l)  The ALJ erred in the conclusion of no response given when the District asked for consensus during the August 2013 IEP meeting is consensus.

(m)  The ALJ erred in the determination that E.O.'s educational service minutes were being met by the defendant through testimony, even though the defendant's own records do not reflect the testimony.

(n)  The ALJ made numerous errors with respect to admission of evidence and exclusion of evidence.

(o)  The ALJ made numerous errors regarding the weight of the evidence.

(p)  The ALJ made numerous errors regarding in her findings of fact.

(q)  The ALJ erred in disregarding the "snapshot" rule prohibiting retrospective testimony to support the appropriateness of a special education program.

(r)  The ALJ made numerous errors of law.

## First Cause of Action

76.  Plaintiff repeat and re-allege paragraphs 1 through 75 as if more fully set forth herein.

77.  The ALJ erred in finding that Student received a free appropriate public education during the 2012-2013 academic year.

78.  The ALJ erred in finding that there was "meaningful" parental participation in the creation of August 2013 IEP.

79.  The ALJ erred in by denying relief sought by the Parents.

80.  The actions by defendant Sedona Oak-Creek Unified School District and the decision of the ALJ, as set forth above, interfered with and denied Student his right to a free appropriate public education (FAPE) under the IDEA, 28 U.S.C. § 1400 et seq. and A.R.S. Title 15, Chapter 7, Article 4, and the regulations promulgated under state and federal law.

81.  Plaintiff requests that the Court to modify the decision of the ALJ, except to the determination of the defendant failing to provide FAPE when it failed to advance the Student to the next STO within a reasonable time once he had demonstrated mastery of the previous STO of the goals and objectives of the August 2013 IEP, and grant the relief requested in the Due Process Complaint and set forth above.

## Second Cause of Action

82.  Plaintiff repeat and re-allege paragraphs 1 through 81 as if more fully set forth herein.

83.  Parents prevailed in the underlying administrative hearing.

84.  Plaintiff parent thus requests reasonable attorney's fees, cost and expenses, pursuant to 20 U.S.C. § 1415(i)(3)(B), which provides for recovery of attorneys' fees to a prevailing party of a child with a disability.

## CONCLUSION

**Wherefore,** Plaintiff respectfully requests that this Court:

(1) Assume jurisdiction over this action;

(2) That it receives the records of the administrative proceedings from the Arizona Office of Administrative Hearings with respect to this matter;

(3) That after considering the evidence and arguments of the parties, that the Court issue an order modifying the decision of ALJ Tammy L. Eigenheer

dated August 8, 2014, finding a denial of a free appropriate public education as alleged in the four Due Process Complaints, dated July 12, 2013, September 3, 2013, November 26, 2013, and January 8, 2014 respectively, and granting relief requested in the aforementioned Due Process Complaints as set forth in the body of this Complaint;

(3) Award to Plaintiff costs, expenses and attorneys' fees for the administrative proceedings pursuant to 20 U.S.C. § 1415;

(4) Award to Plaintiff costs, expenses and attorneys' fees for this action pursuant to 20 U.S.C. § 1415; and

(5) Grant such other and further relief as the Court deems just and proper.


**RESPECTFULLY SUBMITTED** this 8th Day of September, 2014.



_Matthew C Oskowis_

Matthew C. Oskowis
Plaintiff, *Pro Se*


**List of Attached and Incorporated Exhibits**

| Exhibit | Description |
|---|---|
| A | Plaintiff's Due Process Complaint (July 12, 2013) |
| B | Plaintiff's Due Process Complaint (September 3, 2013) |
| C | Plaintiff's Due Process Complaint (November 26, 2013) |
| D | Plaintiff's Due Process Complaint (January 8, 2014) |
| E | Administrative Law Judge Decision (August 4, 2014) |

///